IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01918-RM-KLM

JANICE NYBORG, and
CLOTILDE SZELKOWSKI,

      Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiffs' First Amended Complaint in Part** [#17][1] (the "Motion").  Plaintiffs filed a Response [#31] in partial opposition to the Motion, and Defendant filed a Reply [#36].  The Motion [#17] has been referred to the undersigned for a Recommendation.  *See* [#27].  The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **recommends** that the Motion [#17] be **GRANTED in part and DENIED in part**.

### I. Background

---

[1]  "[#17]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  The Court uses this convention throughout this Recommendation.

According to the Amended Complaint [#14],[2] on December 15, 2019, a vehicle driven by Michael Gomez-Quintana ("Gomez-Quintana") rear-ended a vehicle in which Plaintiffs were traveling, injuring them both.  *Am. Compl.* [#14] ¶¶ 5, 7.  Mr. Gomez-Quintana was uninsured with respect to Plaintiffs' damages, but Plaintiffs were both insured for uninsured motorist ("UM") benefits under an automobile insurance policy with Defendant, with coverage limits of $50,000 per person and $100,000 per incident.  *Id.* ¶¶ 9, 12.  Plaintiffs timely notified Defendant of their UM claims and asked Defendant to pay them benefits owed under the terms of the policy.  *Id.* ¶ 13.

Plaintiff Janice Nyborg ("Nyborg") submitted $9,170.73 of medical bills and $7.14 in mileage to Defendant.  *Id.* ¶¶ 14-15.  Defendant issued an advance payment in the amount of $8,296.70 to Plaintiff Nyborg, which Defendant contends is reflective of the amount of her economic losses, but has allegedly not explained the reason that it has not considered or issued payment for the full amount of her documented losses.  *Id.* ¶¶ 19-20.  At the same time when Defendant advanced this payment to Plaintiff Nyborg, it offered to settle with her for a total of $13,796.70 (i.e., $5,500.00 more than already paid), providing that "[t]his settlement offer is inclusive of all damages, known and unknown, and any liens, assignments[,] or statutory rights of recovery."  *Id.* ¶ 21.  Plaintiffs allege that Defendant's "offered" amount of $13,796.70 is within the range of value Defendant assigned to Plaintiff

---

[2]  The Court accepts all well-pleaded allegations of the Amended Complaint [#14] as true and construes them in the light most favorable to Plaintiffs, the non-movants.  *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).  The Court advises Plaintiffs to be more careful in the future regarding the numbering of paragraphs in pleadings and other documents.  *Compare Am. Compl.* [#14] at 5-7 (including numbered paragraphs 33-48) *with id.* at 7-9 (including a second set of numbered paragraphs 33-48).  In the interest of clarity, the Court cites page numbers as well as paragraph numbers when referring to either set of paragraphs numbered 33-48.

Nyborg's claim for UM benefits, i.e., that Defendant agrees that Plaintiff Nyborg's UM claim is worth a minimum of $13,796.70. *Id.* ¶ 22. Plaintiffs state that, at the time this offer was made, Plaintiff Nyborg was still receiving medical treatment for injuries sustained in the collision. *Id.* ¶ 24.

Meanwhile, Plaintiff Clotilde Szelkowski ("Szelkowski") submitted $2,766.34 of medical bills and $7.14 in mileage to Defendant. *Id.* ¶¶ 16-17. Defendant has issued an advance payment of $2,773.48 to her. *Id.* ¶ 25. At the same time when Defendant advanced payment to Plaintiff Szelkowski, it offered to settle with her for a total of $5,273.48, providing that "[t]his settlement offer is inclusive of all damages, known and unknown, and any liens, assignments[,] or statutory rights of recovery." *Id.* ¶ 26. Plaintiffs assert that this offered amount of $5,273.48 is within the range of value Defendant assigned to Plaintiff Szelkowski's claim for UM benefits, i.e., that Plaintiff Szelkowski's UM claim is worth a minimum of $5,273.48. *Id.* ¶ 27. Initially, Defendant issued payment to Plaintiff Szelkowski for the full amount of its offer, i.e., $5,273.48, but Defendant issued a stop payment on that amount because it would not pay Plaintiff Szelkowski the full amount of the offer until she agreed to settle her UM claim completely. *Id.* ¶ 28. Defendant then sent a new check to Plaintiff Szelkowski in the amount of $2,773.48, the original amount of the advance payment (i.e., $2,500.00 less than the settlement offer). *Id.* ¶ 29. At the time when Defendant attempted to induce Plaintiff Szelkowski into a settlement, she was still receiving medical treatment for injuries sustained in the collision. *Id.* ¶ 31.

As a result of these circumstances, Plaintiffs assert three claims against Defendant: (1) breach of contract—UM benefits, *see id.* at 7 ¶¶ 33-37; (2) first-party statutory claim under Colo. Rev. Stat. § 10–3–1116, *see id.* at 7-8 ¶¶ 38-42; and (3) bad faith, *see id.* at

8-9 ¶¶ 43-48.  In the present Motion [#17], Defendant seeks dismissal of the second and third claims.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual

-4-

enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

Defendant argues that Plaintiffs have failed to state a claim with respect to both their statutory unreasonable delay/denial claims and their common law bad faith claims. *Motion* [#17] at 3-11.  The Court first addresses the legal framework for Plaintiffs' claims and then turns to Defendant's argument that Plaintiffs' allegations that Defendant's conduct was unreasonable, as required to state statutory and common law bad faith claims, are not plausible as a matter of law.

### A.    Legal Framework[3]

The requirements of a common law bad faith claim under Colorado law are heightened in comparison to those of a statutory bad faith claim.  Both common law and statutory bad faith claims require a showing of unreasonable conduct.  *Trujillo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-00410-WJM-NRN, 2019 WL 3996882, at *8 (D. Colo. Aug.

---

[3] Because the Court's jurisdiction in this lawsuit is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a), the Court applies federal procedural law and Colorado substantive law. *See Am. Compl.* [#14] ¶ 4; *4 Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996).

-5-

23, 2019) (citing *Goodson v. Am. Standard. Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004)).   However, a common law insurance bad faith claim requires the insured to sufficiently allege both that the insurer acted unreasonably under the circumstances and that the insurer knowingly or recklessly disregarded the validity of the insured's claim, while "the only element at issue in a statutory claim is whether an insurer denied [or delayed] benefits without a reasonable basis."  *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 990 (Colo. App. 2015) (*Fisher I*) (citations omitted), *aff'd State Farm Mut. Auto. Ins. Co. v. Fisher*, 418 P.3d 501, 506 (Colo. 2018) (*Fisher II*).   Here, Defendant's Motion is premised on whether Plaintiffs have sufficiently alleged the common element of these two claims, i.e., that Defendant engaged in unreasonable conduct.  *Motion* [#17] at 3-11.

Plaintiffs are asserting first-party claims, i.e., they are suing their own insurer for UM benefits to which they are directly entitled under the terms of the insurance policy.  *Bucholz v. Safeco Ins. Co. of Am.*, 773 P.2d 590, 593 (Colo. App. 1988).   "[F]irst-party cases differ from third-party cases because, in a first-party action, the defendant insurance company owes the plaintiff-insured a duty of good faith."  *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012).   The basis for liability is "the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability."  *Sanderson v. Am. Fam.*, 251 P.3d 1213, 1217 (Colo. App. 2010).   "Thus, the fact that an insurer eventually pays an insured's claim will not foreclose a lawsuit based on the insurer's conduct prior to payment."  *Id.*  The inquiry is "whether reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably . . . ."  *Id.* at 1219 (quoting *Zilisch, v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000)).   The reasonableness of the insurer's

conduct is viewed objectively.  *Id.* at 1217.

**B.     Failure to Pay Full Amount of Economic Losses**

Part of Plaintiff Nyborg's bad faith claims rests on her allegations that Defendant has, without explanation, failed to pay her the full amount of her documented economic losses.  Resolution of this part of the present Motion [#17] hinges largely on which documents the Court may consider in connection with the adjudication of the Motion [#17], and therefore the Court begins its analysis by addressing this issue.

Defendant attaches two documents to its Motion [#17]: (1)  copies of two letters (one to each Plaintiff) dated April 7, 2020, *see Ex. A* [#17-1], and (2) copies of two letters (one to each Plaintiff) sent on April 9, 2020, *see Ex. B* [#17-2].  Plaintiff responds to these submissions by simply stating that "[i]t is probably not proper for the Court to consider these exhibits." *Response* [#31] at 8.  Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances.  As is relevant here, the Court may consider outside documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their complaint.  *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Defendant states that "[t]he settlement offers, and allegations that advance payments were issued, can only be based on letters issued to Plaintiffs on April 7, 2020 (offer of settlement and explanation of settlement offer) and April 9, 2020 (letters submitted with advance payments for medical expenses)." *Motion* [#17] at 6-7 (citing *Ex. A* [#17-1];

*Ex. B* [#17-2]).  Facially, this may be correct, but such a conclusion is called into question when Plaintiffs' allegations are carefully considered.  Plaintiff Nyborg alleges: "At the same time that Defendant advanced payment to Plaintiff Nyborg, it 'offered' to pay her $13,796.70.  In conjunction with this 'offer,' Defendant said, '[t]his settlement offer is inclusive of all damages, known and unknown, and any liens, assignments[,] or statutory rights of recovery.'"  *Am. Compl.* [#14] ¶ 21.  Similarly, Defendant Szekkowski alleges: "At the same time that Defendant advanced payment to Plaintiff Szelkowski, it 'offered' to pay her $5,273.48.  In conjunction with this 'offer,' Defendant said, '[t]his settlement offer is inclusive of all damages, known and unknown, and any liens, assignments[,] or statutory rights of recovery.'"  *Id.* ¶ 26.  The language alleged by Plaintiffs regarding what is included in the purported settlement offers is not found in either of the April 7 letters, *see Ex. A* [#17-1], or in either of the April 9 letters, *see Ex. B* [#17-2].  Thus, the Court cannot find that these documents are the same documents which Plaintiffs quote in the Amended Complaint [#14], and therefore the Court finds that they may not be considered in connection with the Motion [#17] based on explicit reference to them in the complaint.  *See GFF Corp.*, 130 F.3d at 1384.

Defendant further argues, though, that the portion of Plaintiff Nyborg's bad faith claims asserting that Defendant failed to explain why it did not issue payment for the full amount of her documented economic losses should be dismissed because a letter purportedly referenced in a different portion of the Amended Complaint [#14], and attached as Exhibit A [#17-1] to Defendant's Motion [#17], clearly provides this explanation.  *Motion* [#17] at 6-7.  However, the Court's conclusion above regarding Exhibit A is not altered by Defendant's argument here.  In the Amended Complaint, Plaintiff Nyborg alleges that she

-8-

has submitted $9,170.73 of medical bills and $7.14 in mileage to Defendant, that Defendant issued an advance payment in the amount of $8,296.70 to Plaintiff Nyborg, and that Defendant has not explained the reason that it has not considered or issued payment for the full amount of her documented losses, i.e., another $881.17. *Am. Compl.* [#14] ¶¶ 14-15, 19-20. Although Defendant argues that the April 7, 2020 letter to Plaintiff Nyborg is referenced in the Amended Complaint [#14] and may therefore be considered, Plaintiffs' counsel states in the Response that she has "been unable to locate any record of receiving this letter," and, therefore, "as far as Plaintiffs are concerned, the allegation is correct." *See* [#31] at 8 n.2. Taking the allegations of the Amended Complaint [#14] in a light most favorable to Plaintiffs, *see Williams*, 926 F.2d at 997, given Plaintiffs' counsel's statement as an officer of the court, and given the absence of any *direct* allegation regarding this letter, the Court finds that there is a dispute over whether the letter was received by Plaintiff Nyborg and/or her counsel. Given this issue, the Court finds that it should not consider the portion of Exhibit A containing the April 7, 2020 letter to Plaintiff Nyborg in connection with adjudication of the issue concerning the explanation of Defendant's partial payment of economic benefits.

Turning to the merits of this issue, Defendant argues that Plaintiff Nyborg's bad faith claims should be dismissed to the extent they are premised on economic damages. *See Motion* [#17] at 6-7. However, this argument hinges entirely on Exhibit A, the April 7 letter to Plaintiff Nyborg. *See id.* Because the Court cannot consider the proffered document, Defendant's entire argument on this point fails.

Accordingly, the Court **recommends** that Defendant's Motion [#17] be **denied** to the extent it seeks dismissal of Claim II and Claim III based on an alleged failure to explain

Defendant's failure to pay the full amount of economic losses to Plaintiff Nyborg.

**C.  Failure to Pay Full Amount of Noneconomic Losses**

     **1.  Settlement Offers and Releases of Claims**

     In short, Plaintiffs argue that Defendant's settlement offer is actually a minimum evaluation of Plaintiffs' claims, including non-economic damages, and therefore, pursuant to *Fisher*, Defendant was required to pay Plaintiffs that amount, and that failure to do so constituted unreasonable conduct.  Plaintiffs further argue that Defendant's requirement that  Plaintiffs sign releases of their claims in exchange for payments of these settlement offers also constitutes unreasonable conduct.

     To begin, much of Defendant's argument is premised on outside documents which, as discussed above in Section III.B., the Court cannot consider here.  *See, e.g.*,*Motion* [#17] at 8 ("However, the settlement offers made to Plaintiffs, which are referenced in the complaint and therefore can be considered with respect to this motion to dismiss without converting the motion to one for summary judgment, clearly demonstrate that Plaintiff's allegations that Defendant has failed to issue payment for the full amount of its settlement offers cannot support their claims.").  Thus, Defendant's argument is constrained insofar as it can only be based on the allegations in the Amended Complaint [#14].

     Besides the amount at issue, the only language quoted from the letters to Plaintiffs is Defendant's identical statements: ""[t]his settlement offer is inclusive of all damages, known and unknown, and any liens, assignments[,] or statutory rights of recovery."  *Am. Compl.* [#14] ¶¶ 21, 26.  Plaintiffs essentially state that Defendant's use of the words "settlement offer" is really a misnomer, and that, in fact, there is no dispute that Plaintiffs' respective claims are worth at least what was contained in those letters, i.e., $13,796.70

for Plaintiff Nyborg and $5,273.48 for Plaintiff Szelkowski, and that Defendant therefore should have paid Plaintiffs those amounts pursuant to *Fisher*. *Id.* ¶¶ 22, 27.

Defendant argues here that Plaintiffs' claims regarding Defendant's failure to make advance payments of settlement offers are not supported by Colorado law. *Motion* [#17] at 7. Defendant forcefully argues that "Colorado law clearly states that an insurer need not issue payment for the amount of a rejected settlement offer." *Id.* at 9. Defendant further argues that, even were the Court to consider this settlement offer to be an evaluation of the claim, that "the law in Colorado still clearly holds that evaluations do not constitute an undisputed amount." *Id.*

Plaintiffs' argument as stated in the Response [#31] essentially boils down to the premise that Plaintiffs and Defendant were not engaged in negotiations to resolve a disputed claim, but rather that Defendant had evaluated Plaintiffs' claims as being worth the highest amounts offered in settlement, i.e., $13,796.70 and $5,273.48, respectively. Because Defendant did not pay Plaintiffs those amounts, Plaintiffs assert that Defendant's conduct could be deemed to be unreasonable by a trier of fact. Plaintiffs also assert that, because they would not sign releases of Defendant's further obligations to them, Defendant refused to pay the amounts which reflect the minimum values of Plaintiffs' claims for UM benefits. *Response* [#31] at 5-6. Plaintiffs argue that it is at least plausible that Defendant did actually evaluate, or should have evaluated, Plaintiffs' claims as being worth the amounts that it "offered" to pay them. Plaintiffs therefore argue that they should be permitted to present to a jury their claims that, because Defendant knew that they were owed at least $13,796.70 and $5,273.48, respectively, on their UM claims, it was unreasonable for Defendant not to pay those full amounts to them. *See, e.g.*, *Response*

[#31] at 8.  The issue then becomes whether this provides a plausible basis for a jury to find that Defendant's conduct was unreasonable.

The Court notes that Plaintiffs' alleged medical injuries are well beneath the amounts of the settlement offers and within the policy limits.  Thus, the remaining amounts claimed can represent only non-economic damages.  *See, e.g., Response* [#31] at 5.  While Plaintiffs alleges that there is no dispute that Defendant owes Plaintiffs "*at least* $13,796.70 [and] *at least* $5,273.48," respectively, that issue is indeed disputed and, in fact, is the central issue relevant to the Motion [#17].  *See Am. Compl.* [#14] ¶¶ 22, 27 (emphases in original).  At a minimum, Plaintiffs assert that Defendant knew that it owed them at least $5,500.00 and $2,500.00, respectively, in non-economic damages but delayed payments of those sums for no good reason.  *Id.* ¶¶ 23, 30.

Plaintiffs cite *Carpenter v. American Family Mutual Insurance Co.*, No. 13-cv-01986-JLK, 2015 WL 8529775, at *2 (D. Colo. Dec. 11, 2015), in support of their argument that "a first-party insurer has no correlative right to condition payment of benefits to its own insured on a release of the insurer's liability, to the detriment of its insured." *Response* [#31] at 7.  In *Carpenter*, the insurer "never disputed" the insured's "serious injuries" and withheld payment of UIM benefits because the insured would not sign a release.  *Carpenter*, 2015 WL 8529775, at *2.  Thus, the insurer refused to pay the plaintiff even the undisputed economic damages that were estimated at $155,000 "because she would not sign a release to forfeit the full value of her UIM policy benefits."  *Id.*

Similarly, the Court notes that in *Hatfield v. Liberty Mutual Insurance Company*, 98 F. App'x 789, 794 (10th Cir. 2004), the Tenth Circuit held that it was bad faith for an insurer to withhold payment until a release was signed where the insurer did not dispute that an

amount was due under the policy. In that situation, "[a] reasonable jury could decide that [the insurance company's] withholding of payment was little more than an effort to take advantage of an insured in need of proceeds rightfully due him, and that there was no 'legitimate dispute,' . . . to justify the failure to pay $25,000." *Hatfield*, 98 F. App'x at 794 (quoting *Davis v. Mid-Century Ins. Co.*, 311 F.3d 1250, 1252 (10th Cir. 2002)).

Here, unlike *Carpenter* and *Hatfield*, Plaintiffs have already been paid the undisputed amount that they were owed based on their medical bills (with the one exception regarding Plaintiff Nyborg's economic damages already discussed in Section III.B. above). Plaintiffs' assertions that Defendant had determined that Plaintiffs were due the entire amounts of the settlement offers or, at the very least, the additional sums that it offered Plaintiffs as to their remaining damages is not plausible. Plaintiffs do not dispute that the amounts being negotiated were non-economic damages. Unlike economic damages such as those associated with Plaintiffs' medical bills, there is no sum certain to which an insured is entitled for non-economic damages, which is indicative of the fact that there was a "legitimate dispute" over the value of such damages. *See Davis*, 311 F.3d at 1252 (finding that the "tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute").

In addition, under Colorado law, evaluations and settlement authority do not bind insurers to the amount offered, nor do they constitute an undisputed amount which must be paid under the policy. *Fisher I*, 419 P.3d at 988. Colorado law dictates further that "settlement authority does not constitute a 'final, objective assessment of a claims [sic] worth to which an insurer may be held'" and that "settlement authority reflect[s] the insurer's 'basic assessment of the value of a claim taking into consideration the likelihood of an

adverse judgment, but do[es] not normally entail a thorough factual and legal evaluation when routinely made as a claim analysis.'" *Sunahara*, 280 P.3d at 656 (quoting *Silva v. Basin Western Inc.*, 47 P.3d 1184, 1190-91 (Colo. 2002)).

The Court finds a case from the Arizona Court of Appeals addressing similar circumstances to be persuasive. *See Voland v. Farmers Ins. Co. of Ariz.*, 943 P.2d 808 (Ariz. App. 1997). There, the insurance carriers offered to settle a UIM claim for $30,000, stating they felt that amount was "the fair value" of the claim. *Id.* at 810. The plaintiff responded that the $30,000 amount was "without foundation[,]" but demanded payment of that amount and stated that the parties could arbitrate the difference. *Id.* The plaintiff did not request that the carriers actually pay the undisputed amount of economic damages in the form of medical bills and lost wages. *Id.* After the case went to arbitration, the plaintiff brought suit alleging that "the carriers acted in bad faith by withholding th[e $30,000] sum from her while the parties followed the policies' arbitration procedure to resolve their dispute about value, or until she executed a release." *Id.* at 810-11 (emphasis added).

The *Voland* court rejected the plaintiff's argument, finding it was "flawed." *Id.* at 811. The court stated that the carriers' statement that they considered the "fair value" of her claim to be $30,000 "does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster ha[d] evaluated as being owed to the insured.'" *Id.* at 812. Rather, the court found that "the settlement offer was simply a proposal to compromise and resolve the claim, nothing more and nothing less. It represented the carriers' evaluation or best estimate, at that point in time, of what the trier (here, the arbitrators) might award." *Id.* The court held that the settlement offer did not bind the carriers and did not set a "'floor' on what the . . . carriers would ultimately have to pay." *Id.* In so holding, the court noted that "a

-14-

personal injury claim is unique and generally not divisible or susceptible to relatively precise evaluation or calculation." *Id.* It stated that "[t]he 'pain and suffering'/general damage elements of a personal injury claim, for example, are inherently flexible and subject to differing and potentially changing evaluations based on various factors." *Id.* at 812-13. Finally, the *Voland* court stated:

> If, in order to avoid a bad faith claim, UM carriers were obligated to pay the amount of their lowest settlement offer without obtaining any release and before any arbitration hearing or award, they would have little if any incentive to settle. Imposing such a requirement would have a chilling effect on genuine settlement evaluations and negotiations. The effect would be to deter settlement and foster litigation, whereas our system of justice encourages settlement and discourages litigation.

*Id.* at 812.

In this case, unlike *Voland*, there are no allegations that Defendant even made a representation of the "fair value" of the claim, but instead simply made settlement offers to Plaintiffs. Again, the settlement offers related to non-economic damages, as Plaintiffs' economic damages had already been paid (again, with the one exception noted above in Section III.B.). Such damages are not susceptible to a precise evaluation. *Voland*, 943 P.2d at 812. In that circumstance, as in *Voland*, the settlement offers did not set a "floor" on what Defendant was required to pay and did not constitute binding admissions of the values which Defendant put on the claims.

Simply stated, an insurer's evaluation of a claim at any particular time does not constitute an undisputed amount which must be paid under the policy. *Fisher I*, 419 P.3d at 988; *Voland*, 943 P.2d at 812. Any argument that Defendant "delayed" or "denied" paying Plaintiffs its initial settlement offers is rejected as contrary to Colorado law. The *Fisher I* Court made it clear that an insurer has no obligation to issue payment in the

amount of an initial settlement offer. *Fisher I*, 419 P.3d at 988 ("State Farm is correct that an assertion that it breached its duty under section 10-3-1115 by failing to pay Fisher the initial settlement offer is inconsistent with Colorado law"); *see also Voland*, 934 P.2d at 811-13. Thus, the Court finds that Plaintiffs' allegations that Defendant's conduct was unreasonable, as required as an element of their bad faith claims, are not plausible

Accordingly, the Court **recommends** that the Motion [#17] be **granted in part** as to second and third claims for relief to the extent they are premised on the payment of settlement offers.

## 2. Miscellaneous Conduct

In addition, Defendant argues that there are no factual allegations in the Amended Complaint [#14] to support Plaintiffs' conclusory statements that Defendant acted unreasonably as follows: (1) "[t]o the extent required to determine the amount of UM benefits owed, Defendant has failed to consult medical professionals regarding each Plaintiff's medical treatments and their relatability to the collision," *Am. Compl.* [#14] at 6 ¶ 41; (2) "Defendant has not documented or investigated any failure to cooperate on behalf of Plaintiff[s]," *id.* at 6 ¶ 46; and (3) "Defendant has not sent a reservation of rights related to this claim," *id.* at 6 ¶ 47. *Motion* [#17] at 10-11.

Plaintiffs did not respond to Defendant's arguments here in their Response [#31]. In the absence of any argument by Plaintiffs, the Court has cursorily examined the Amended Complaint [#14] and agrees that no factual allegations clearly appear to directly apply to this purported conduct by Defendant, such that the Court could find that these bases for statutory and common bad faith claims can survive the Motion [#17].

-16-

Accordingly, the Court **recommends** that the Motion [#17] be **GRANTED** to the extent that Defendant seeks dismissal of these three bases for Plaintiffs' second and third claims for statutory and common law bad faith.

**D.    Request to Strike Extortion Allegations**

Finally, the Court turns to the part of Defendant's Motion [#17] seeking to strike portions of the Amended Complaint [#14] under Fed. R. Civ. P. 12(f).[4]  Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The rule's purpose is to conserve time and resources by avoiding litigation of issues which will not affect the outcome of a case."  *Sierra Club v. Tri-State Generation & Transmission Ass'n*, 173 F.R.D. 275, 285 (D. Colo. 1997) (citing *United States v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993)); *see also RTC v. Schonacher*, 844 F. Supp. 689, 691 (D. Kan. 1994) (stating that Rule 12(f)'s purpose "is to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial").

However, motions to strike are disfavored and will only be granted under the rarest of circumstances.  *Sierra Club*, 173 F.R.D. at 285.  As such, the moving party's "burden of proof is a heavy one."  *Holzberline v. OM Fin. Life Ins. Co.*, No. 08-cv-02053-LTB, 2008 WL 5381503, at *1 (D. Colo. Dec. 22, 2008).  Thus, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of

---

[4] In this section, Defendant also argues that, to the extent one can be inferred, any claim for extortion should be dismissed.  *Motion* [#17] at 12-13.  No claim for extortion is explicitly made in the Amended Complaint [#14], which was drafted by attorneys, and Plaintiffs do not argue in the Response [#31] that they have actually made such a claim.  Accordingly, this argument appears to be moot.

prejudice before the court will grant a motion to strike." *Sierra Club*, 173 F.R.D. at 285. Moreover, regardless of whether the moving party has met its burden to prove that allegations contained in a pleading violate Rule 12(f), discretion remains with the Court to grant or deny the motion. *See* Fed. R. Civ. P. 12(f) (stating that allegations which are subject to Rule 12(f) "may" be stricken).

Here, Defendant does not meet its heavy burden. The Court has reviewed the portions of the Amended Complaint [#14] to which Defendant refers. *See Motion* [#17] at 12-14 (citing *Am. Compl.* [#14] at 5-6 ¶¶ 36, 39; *id.* at 9 ¶ 48). Defendant argues that there is no factual basis for what it considers an allegation of extortion, and therefore the "allegations are both immaterial and impertinent." *Motion* [#17] at 14. Defendant argues further that these allegations are "baseless" and "degrade the Defendant's moral character." *Id.*

The Court finds that Defendant has overstated Plaintiffs' allegations in their Amended Complaint [#14]. While the statements may not be flattering to Defendant, such is the nature of many lawsuits, and, absent abuse, Plaintiffs are permitted to make factual allegations in support of their claims. Importantly, Defendant fails to allege with any specificity that it will suffer prejudice if the portions of the Amended Complaint [#14] it identifies are not stricken.

Accordingly, the Court **recommends** that the Motion [#17] be **denied** to the extent Defendant seeks to strike certain allegations pursuant to Fed. R. Civ. P. 12(f).

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **RECOMMENDED** that the Motion [#17] be **GRANTED in part and DENIED in part**, as outlined above.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  February 19, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-19-